IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


VICTOR LOGAN,
               Petitioner,

        vs.                                 No. 18-3177-JTM

SHANNON MEYER, Warden,
   Lansing Correctional Facility, *and*
DEREK SCHMIDT, Kansas Attorney General,
               Respondents.[1]


MEMORANDUM AND ORDER


On April 28, 2010, a jury found Victor Logan guilty of one count of aggravated indecent liberties with a child, two counts of indecent liberties with a child, and one count of lewd and lascivious behavior.[2] The district court sentenced Logan to 171 months' imprisonment. Logan appealed and the Kansas Court of Appeals affirmed his convictions in *State v. Logan*, 311 P.3d 415, 2013 WL 5735631 (Kan. App. 2013) (unpub.), *rev. denied,* 300 Kan. 1090, 338 P.3d 11 (2014). Logan subsequently submitted a collateral challenge to his convictions under K.S.A. 60-1507, alleging his attorneys were ineffective in failing to inform him of plea offers, not asking for a psychological examination of the

---

[1] The court substitutes as defendant the current warden for the Lansing Correctional Facility.

[2] *See State v. Logan*, No. 08-CR-1685 (D. Johnson County, April 28, 2010) (in violation, respectively, of K.S.A. 21-3504, 21-3503, and 21-3508).

victims, failing to investigate, and not calling witnesses. This challenge was denied by the Court of Appeals. *Logan v. State*, 404 P.3d 361, 2017 WL 4562569 (Kan. App., Oct. 13, 2017), *rev. denied*, April 26, 2018.

In the present habeas corpus action, Logan repeats some of the ineffective assistance of counsel allegations from the 60-1507 proceeding. He also alleges the court was biased against him, and that there was prosecutorial misconduct. For the reasons provided herein, the court finds that petitioner has failed to demonstrate the violation of any federal right, and denies the motion for writ of habeas corpus.

In the present proceeding, the court presumes the validity of the state court's factual findings, in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254 (e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004). The court has carefully reviewed the evidentiary record from the state trial, and finds no substantial evidence demonstrating the factual findings of the state court were untrue. Those findings were accurately summarized by the Kansas Court of Appeals in its 2013 opinion.

> Logan married A.T.'s mother in 1997 when A.T. was 5 years old. The couple also had two children together. Over the years, the relationship between Logan and A.T.'s mother became strained and they separated on more than one occasion. But they got back together each time, and Logan was living in the home during the summer of 2007.
>
> In May 2007, M.O. came to live with A.T.'s family and stayed there for approximately 4 months. One evening during the summer, when A.T.'s mother was not home, M.O. and A.T. were watching TV in the basement. Accordingly to the girls, who were both 15 years old at the time, Logan was also in the basement and began making comments about

M.O. being sexy. At some point, Logan tried to get the girls to drink some wine, but they evidently did not do so.

At some point during the evening, A.T. got a phone call and went upstairs. Logan then asked M.O. to come over to where he was sitting and he tried to kiss her. She refused his advance and went back to sit on the couch. According to M.O., Logan then came over to the couch and pulled out his penis. While masturbating, Logan asked M.O. things like whether she thought she could handle something like that or whether it was too big. Logan started to climb on top of M.O. with his penis still out, but she left the room and went upstairs. M.O. did not tell anyone what happened at that time.

Sometime in the fall of 2007, A.T. and M.O. were riding in a car with their boyfriends. They began discussing Logan, and A.T. seemed to be upset. Her boyfriend asked her what was wrong, and A.T. told him that Logan had gotten into bed with her. Although she did not go into many details, M.O. stated that Logan had also harassed her.

Around 4 p.m. on October 19, 2007, A.T.'s mother told her that Logan was moving out for good. In response, A.T. said she had something she needed to tell her mother. She then explained that Logan had touched her inappropriately on two occasions—once when she was 12 and another time about a month prior to the conversation when she was 15. A.T.'s mother called some of her friends to come over for support, and a few hours later A.T.'s mother or one of her friends called the police.

Regarding the first incident, A.T. said that Logan came into her sister's room where she was sleeping and lay behind her under the covers. She indicated that although they both had clothes on, Logan touched her "private areas" over her clothes with his hand, saying, "'This is how it's going to feel when a boy lays [sic] behind you.'" According to A.T., she could feel his hard penis against her. Evidently, she got up and went back to her own room. The next morning, Logan said he was sorry and asked her not to tell her mother.

The second incident occurred when A.T. was 15 years old and she woke up one night with Logan lying behind her in her bed. A.T. said that Logan rubbed her thighs and touched her. Once again, she could feel that his penis was hard. According to A.T., she got up and went to the bathroom for 10 to 15 minutes. When she came out and started to go

downstairs to tell her mother, Logan told her nothing had happened and to go back to sleep.

On October 24, 2007, M.O. told A.T. and her mother about the incident in which Logan had exposed himself to her. A.T.'s mother called the police to report this incident, and a detective investigated the allegations.

A federal court reviews a state prisoner's challenge to matters decided in state court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013). A federal court may not grant a state prisoner habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established law" refers to the Supreme Court's holdings, as opposed to its dicta. *Lockett*, 711 F.3d at 1231. A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (quotations omitted).

With respect to allegations of ineffective assistance of counsel, the federal court may grant relief "only when the petitioner shows 'there is no possibility fair-minded

4

jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 21204) (citing *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 674 (2011)). Even a "strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

The court finds that Logan's claim the trial court judge was biased against him is procedurally defaulted. Logan never raised the issue in his appeal or in his 60-1507 motion. The claim accordingly can only be presented here if there were some external cause that prevented him from raising the issue in state court, and that this barrier worked to his prejudice, or that the result would be a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Gray v. Netherland*, 518 U.S. 152, 161 (1996). Here, no such external barrier existed which would have stopped Logan from raising the issue of alleged judicial bias in his post-conviction arguments. Nor does the record support any determination that Logan suffered a miscarriage of justice — that is, that an alleged error which probably resulted in the conviction of an innocent person. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Given the substantial and strong evidence in the record, no miscarriage of justice occurred.

5

The court also finds Logan has failed to demonstrate any violation of his rights with respect to his various arguments that his attorneys were constitutionally ineffective. Here, the Kansas Court of Appeals applied the controlling federal standard for reviewing such claims, and determined the claims failed to meet that standard. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Further, in the present review, as noted earlier, the AEDPA essentially widens the leeway for state courts in reaching case-by-case determinations as to the effectiveness of counsel, *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014), as such claims are essentially subject to "doubly deferential" review. *Woods v. Etherton*, ___ U.S. ___, 136 S.Ct. 1149, 1151, 194 L.Ed.2d 333 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011).

The Kansas Court of Appeals rejected Logan's arguments that his attorneys were ineffective in (1) failing to inform him of plea offers, (2) not asking for a psychological examination of the victims, (3) failing to properly investigate, and (4) not calling witnesses. The Court of Appeals noted that the district court had heard directly opposing testimony from Logan and from his two attorneys, and found credible the attorneys' testimony that they told Logan of potential plea officers but that he was not interested in such offers. *See* 2017 WL 4562569 at *4. The Court of Appeals also found that substantial evidence supported the district court's determinations (a) there were no grounds obtaining psychological testing of the victims under *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), and that in any event Logan had failed to show any prejudice from the failure; (b) the attorneys were not ineffective in giving him a transcript of a

statement by one of the victims (and not showing him a video of that statement), and, again, in any event Logan suffered no prejudice from the alleged failure, and (c) the attorneys were not ineffective in not calling witnesses whose testimony was alternatively redundant or inadmissible. *Id*. at *5-7.

These determinations as to credibility, the existence of substantial evidence, and findings of a lack of prejudice, were all properly made by the state courts, and rendered under the controlling *Strickland* framework. The record presents no reason to conclude that as these determinations  were anything other than correct.

The Court of Appeals addressed Logan's ineffective assistance of counsel arguments in the 2017 K.S.A. 60-1507 proceeding. It previously addressed his claim of prosecutorial misconduct in the 2013 direct appeal. The court held that the prosecutor's statements during closing argument, urging the jury to believe the statements of A.T. and M.O., were not misconduct.

> When taken in context, we find none of these comments to be improper. In fact, it would have been difficult for the prosecutor to comment on the evidence presented in this case without suggesting that certain testimony was more credible than other testimony ….

> In the context of this case the prosecutor was within his bounds to argue that A.T. and M.O. were more credible than Logan, which was exactly what the prosecutor did.

2013 WL 5735631, at *5-6. The court further found that, given the evidence, there was no reasonable possibility that comments in any event contributed to the jury's verdict.

A defendant is entitled to habeas relief only where a prosecutors' comments "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The defendant must show a prosecutor's comments were "of sufficient significance to result in the denial of the defendant's right to a fair trial before [the misconduct] will rise to the level of a due process violation." *United States v. Oliver*, 278 F.3d 1035, 1040 (10th Cir. 2001) (citations omitted).

Here, the Kansas Court of Appeals reasonably concluded that the prosecutor's comments were not improper and in any event did not affect the ultimate outcome of the case.  The petitioner has failed to show that the conclusions of the Court of Appeals was contrary to, or involved an unreasonable application of United States Supreme Court precedent.[3]

The court has also reviewed the various letters and other communications which have been submitted by Logan to the Clerk of the Court and which relate to his potential release date from state custody or his placement in county jail, and finds these do not affect the merits of his habeas claim, and do not present a valid reason for deferring a ruling in the present matter.

---

[3] The State correctly notes that federal courts, including the Tenth Circuit, have observed that reached similar conclusions. *See United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011-12 (10th Cir. 1999); *United States v. Walker*, 155 F.3d 180, 188 (3rd Cir. 1998).

IT IS ACCORDINGLY ORDERED this day of October, 2020, that the Petitioner's request for habeas corpus relief is hereby denied.

*J. Thomas Marten*
J. Thomas Marten, Judge